## MacDONNELL v. VOORHEES RUBBER MFG. CO.

(District Court, D. New Jersey. January 10, 1911.)

PATENTS ⬤⇒328—VALIDITY AND INFRINGEMENT—PNEUMATIC TIRE.

The MacDonnell patent, No. 981,208, for an improvement in pneumatic tires, which consists in rendering the inner tube self-healing in case of puncture by means of a wrapping or stay strip of canvas, which is incapable of stretching transversely, but capable of stretching in a direction longitudinally, of the tire, was not anticipated and discloses invention; also *held* infringed.

In Equity. Suit by James MacDonnell against the Voorhees Rubber Manufacturing Company for infringement of letters patent No. 981,208, for a pneumatic tire, granted to complainant January 10, 1911. On final hearing. Decree for complainant.

Duell, Warfield & Duell, of New York City, for plaintiff.
Prindle, Wright & Small, of New York City, for defendant.

RELLSTAB, District Judge. The patent in suit, No. 981,208, for improvement in pneumatic tires, was issued to plaintiff January 10, 1911. The bill charges infringement. The defenses are invalidity and noninfringement.

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

The object of the invention is to produce an inner tube which, when punctured, will be self-healing without preventing it from assuming the natural shape upon inflation. In his application for the patent the patentee states:

"It has heretofore been proposed to make a pneumatic tire with a tread portion thickened and made of rubber which is held under compression, so that, if the tire is punctured, the hole will be immediately sealed up as soon as the puncturing body is withdrawn. This construction has been secured by molding the tire tread in a normally depressed position and securing firmly to the exterior of the rubber body a stay strip of canvas or similar material, so that when the tire is inflated the nonstretching qualities of the stay strip will cause the rubber to be compressed. So far as I am aware, in all prior attempts to make a tire of this type, the stay strip or backing has been inelastic, both transversely and longitudinally. While the inelastic quality in a direction transversely of the tire is essential to maintain the desired compression of the rubber, yet if the backing is not capable of stretching in a direction longitudinally of the tire, then, when the tire is inflated, the circumferential length of the tread portion cannot be appreciably increased, and the tire will assume its shape when inflated by a compression longitudinally of that portion of the tire opposite the tread.

"My present invention is in the nature of an improvement on tires of this class, and aims to provide a construction wherein, when the tire is inflated, the tread portion thereof is held against stretching in a transverse direction, thereby securing the desired compression of the rubber, while at the same time said tread portion can expand or stretch longitudinally to permit the tire to assume its inflated shape, without subjecting the portion of the tire opposite the tread to any appreciable longitudinal compression."

"I accomplish my desired object by making the stay strip of such a character that it is incapable of stretching transversely, but is, on the other hand, capable of stretching in a direction longitudinally of the tire. In the drawings, I have shown two embodiments of my invention, but the invention is not limited to the constructions herein illustrated. *   *   *

"The pneumatic tire herein illustrated is especially designed for use as an inner tube in a double tube tire; but in the drawings I have not deemed it necessary to show the shoe or outer casing, as the manner in which an inner tube is received within the shoe is well known. The inner tube is shown at 3, and it is in the form of an endless tube of rubber which is molded with the tread portion 4 somewhat thicker than the other portions of the tire. The rubber tire has applied and firmly secured thereto a 'backing or stay strip 5 which has special characteristics as hereinafter described. The tire is molded in the form shown in Fig. 1 with the tread portion in a normally depressed or concaved position, and during the process of making the tire the stay strip 5 is firmly secured to the outer surface of the tread portion when in its depressed position. While it is not essential to the invention that the envelope or stay strip 5 should entirely inclose the tire, yet I prefer to make it as herein shown, and to provide the edges 8 of the stay strip which extend about the portion of the tire adjacent the rim of the wheel with suitable means, such as eyelets 9 by which they may be connected together by lacing 10.

"The stay strip 5 is so made that it is incapable of stretching transversely of the tire, but is capable of stretching in a direction longitudinally of the tire. Since the stay strip cannot stretch in a direction transversely of the tire, it will be readily apparent that when the tire is inflated, as shown in Fig. 2, the rubber forming the thickened tread portion of the tire will be put under considerable compression, due to the fact that the outer face of the rubber is not permitted to expand because of the presence of the stay strip. It will also be apparent that when the tread portion 4 is forced outwardly as the tire is inflated the circumference longitudinally of said tread portion is increased considerably in length; but owing to the fact that the stay strip which I employ is capable of stretching longitudinally, the presence of the stay strip does not interfere in any way with such increase in length.

"The stay strip, having the capacity of stretching longitudinally while being incapable of stretching transversely, may be made in a variety of ways. One way of thus making the stay strip is to cut it on the bias; that is, to so form the stay strip that the warp and weft threads extend diagonally across the width of the strip, as seen in Figs. 3, and 4. Where this construction is employed, the stay strip is capable of stretching longitudinally as required to accommodate the increasing circumferential length of the tire as it is inflated, and such longitudinal stretching results in tending to draw the edges 8 of the stay strip together as will be obvious. This tendency not only counteracts any tendency of the strip to stretch transversely, and thus makes the stay strip inelastic transversely, but also tends to actually decrease the width of the stay strip, and thus augments the compression under which the rubber forming the tread portion 4 is placed.

"In Figs. 5 and 6 I have shown another embodiment of my invention, wherein the stay strip is provided with slits through its central portion to permit of the necessary longitudinal stretching of the portion which overlies the tread of the tire. In this case, the warp threads extend longitudinally of the stay strip and the weft threads extend transversely thereof, but the slits 20 formed in the stay strip permit the necessary elongation thereof at the tread portion of the tire.

"From the above it will be seen that my invention comprehends the use of a stay strip for securing the desired compression of the tread portion of the tire, which stay strip is incapable of stretching transversely, but which is capable of stretching longitudinally to permit of the natural inflation of the tire."

This nonstretchableness transversely of the stay strip, while it is yet stretchable longitudinally, is the gist of the alleged invention, and is made the dominant element of each claim in issue—1, 2, and 4. These claims, after being first rejected, were allowed by the Commissioner of Patents. Of the patents cited by him, Moffatt, No. 470,070, March 1, 1892, alone is mentioned in the large number of patents relied upon by the defendant.

As noted in the patentee's recital of the prior art, a stay or backing strip, made of elastic or stretchable material, firmly attached to the tread surface of a pneumatic tire, was known and used in such art to effect an auto-healing of tire punctures. None of the cited patents, however, taught the need or desirability of stretching the strip longitudinally while preventing its stretching laterally. Compression both ways—longitudinally and transversely—was the desideratum in all the prior devices, and that seems to have been the dominant concept in all the efforts to produce such a self-healing device. The need or desirability of securing a longitudinal expansion while effecting a transverse or lateral compression of the tire seems not to have been recognized.

Moffatt (Moffatt and Huss), No. 470,070, and British Golding, No. 14,468 of 1891, are the patents mainly relied upon by the defendant as anticipations. No other will be specifically referred to, for the reason that, if these are ineffectual for this defense, none of the other citations can be of aid to it. Both had for their object the prevention of the escape of air from and the collapse of the punctured tire. This, it was claimed, was accomplished by providing the tire with an external restraining jacket or covering of canvas or similar material, which prevented the stretching or lengthening of the outer surface of the inflated tire held under compression. These patents typically illustrate the prior art, which predicated its efforts in producing a "self-

healing" or "self-closing" tube, in case of puncture, on a condition of inelasticity of the jacket or stay strip both longitudinally and transversely. It is apparent that a pneumatic tube compressed longitudinally as well as transversely would be of no practical value as regards inner tubes, because, while such double compression would accomplish "self-healing," the inner tube could not increase in diameter externally, and would be likely to burst under the strain resulting from any effort to make it set firmly to the inner surface of the shoe, which is apt to vary both in size and inner conditions, as well as under the shocks that necessarily attend its use in automobile service.

MacDonnell's conception was that longitudinal inelasticity of the stay strip was not necessary to secure the required compression; that that could be obtained, though the strip were permitted to extend longitudinally; and that a longitudinal stretching would tend to decrease the width of the stay strip, and thus augment the compression obtained by the strip's being made transversely inelastic. Such longitudinal extensibility would also permit an inner tube to seat its tread portion firmly against the inner surface of the tread portion of the shoes, which, though intended to be the same size, vary somewhat in their internal dimensions and surface conditions. This accommodation to such variation in the internal dimensions and conditions of shoes is of great practical value in the use of such tubes. It avoids supplying many different sizes of tubes, and prevents the breaking or disintegration of the stay strip under the strains and shocks to which automobile tires are subjected when in use. It also minimizes the friction apt to result from less firm contact between the tube and the shoe. MacDonnell took the structure of the acknowledged prior art, of little practical value in service, as it was the product of an idea pointing in the wrong direction, and by appropriating the sustained stretchability longitudinally of the fabric used in making the stay strip, the reverse of the teaching of such art, he augmented the transverse compression shown in the prior art, and avoided the objectionable compression longitudinally, which the devices of such art necessarily produced, and secured a commercially practical tire as against the inoperative one of the prior art.

The defendant's contention that, inasmuch as the stay strip shown in the cited patents, and in use in the prior art, is capable of longitudinal extension, therefore there is no invention in appropriating such characteristic, even in the combinations claimed, is not tenable. True, such art used a stay strip of elastic quality, which, because of its shape and inherent characteristics, would stretch more longitudinally than laterally, and which, as pointed out by some of the cited patents, could be made to stretch even more in a given direction by cutting the strip on the bias; yet MacDonnell's conception in the use of such means was entirely different from anything that had preceded, and his actual use of these old means was so radically contrary to the teaching of the art as to amount to a repudiation thereof, and the results obtained by him in such use are so different as to place his combination of these old means in a new class. His combination produced a structure outside the teaching of the prior art. Its novelty and utility are proven, and, in my opinion, the idea or conception mechani-

cally expressed by and through the elements of such combination amounts to invention.

Does the defendant's structure infringe? Not only is it capable of extending longitudinally under pressure, but it is intended to do so while it compresses transversely. Defendant's tubes are known as "Brown Perfection Tubes," and are made in accordance with the structure disclosed in Brown's application for patent, serial No. 704,637. In this application Brown said, with reference to his compression band (stay strip):

"The fabric which I use is one having sufficient elasticity so that, as the longitudinal periphery of the tread expands to fit the periphery of the tire shoe, the fabric will stretch and not break transversely. On the other hand, it is desirable to have as little elasticity to the said compression band transversely as may be. I find Seal Island canvas to be a fabric which complies with these conditions. The rubber in the portion of the tire opposite the tread portion, being unrestrained by the compression band, may stretch, if necessary, so that the inner tube may completely fill the cross-section of the tire shoe."

In differentiating this tube from the tube of the Birtwisle patent, cited against the Brown application, Brown said:

"Birtwisle's tube would burst in actual use, because the extent of free rubber is not sufficient to allow for the expansion to fit the various size shoes. His stretch of rubber is so slight that the percentage of elongation would be over 300 per cent. greater than in applicant's tube as preferably made."

These excerpts show that Brown's tubes were designedly capable of stretching longitudinally, that such characteristic distinguished them from the cited art, and that it was essential to a practical inner tube that it preserve such extensibility to a marked degree. Without a stay strip stretchable longitudinally, the defendant's structure could not have obtained its admitted commercial success. Its strip, however, is not cut on the bias, and its extensibility longitudinally is not increased by slitting it transversely. It is cut straight, and its extensibility is that which inheres in the fabric used plus the return from the contraction resulting from rubberizing the fabric, which return is induced through the pressure of inflation, presently to be mentioned. Again, by reason of the different method employed in the manufacture of the defendant's tubes—one taught in the prior art—from that pointed out in the MacDonnell patent, a greater extensibility of MacDonnell's stay strip is necessary to seat its inflated tube firmly against the shoe than in the case of the defendant's tube. The defendant stretches its fabric before it is rubbered, with the result that the extensibility of the stay strip after it has become a part of the tube is somewhat reduced below that which it would have possessed if such stretching had not taken place. In rubberizing the stay strip, it is contracted. This contraction, however, is not permanent, as a longitudinal stretching takes place when the tube is inflated, and it may, if necessary, stretch to an extent at least equal to the amount it had shrunk in vulcanization—about three inches —which would be ample to seat the tube firmly to the inner surface of the tread portion of the shoe. The several elements of the defendant's structure, except that of longitudinal extensibility of its stay strip, are

within the teaching of the patents of the prior art, and as to such extensibility the defendant's combination employs no more than remains in the fabric after the stretching and contracting that take place in the process of making its tube.

It is in this feature, however, that the defendant's structure passes outside the teaching of such prior art and comes within the instruction of the MacDonnell patent. That, in constructing a tube according to the method named in the MacDonnell patent, a longer stay strip would be necessary than in the tube as constructed by the defendant, is of no significance, inasmuch as both methods of forming the tube are taught in the prior art. The gist of MacDonnell's invention is not in the comparative length of the stay strip, nor in obtaining a greater extensibility longitudinally than is normally inherent in a given fabric, but in utilizing, instead of preventing the use of, its extensibility longitudinally, while at the same time contracting and compressing it transversely for the purposes specified. That the defendant does not use a slitted stay strip, or one cut on the bias, does not save its structure from being an infringement, unless MacDonnell is limited to such character of strip. He instanced such ways of making a strip to secure his longitudinal extensibility and lateral compression, but he expressly disclaimed the notion that these were the only mechanical means of securing such a result. The defendant's utilization in making its stay strip of a fabric which possesses considerable extensibility, and which through the method of its employment extends only longitudinally when the tube is inflated, which longitudinal extension is essential to a proper adjustment of the tube to the shoe which incases it, and which character of extensibility is one of the results sought in the use of such stay strip, is but the equivalent of the means pointed out by the MacDonnell patent to accomplish a like result.

In my opinion, the defendant's structure utilizes the same idea in substantially the same way for the same dominant purposes, and obtains thereby substantially the same results as are pointed out in the plaintiff's patent, and in so doing infringes the plaintiff's invention, as covered by claims 2 and 4 of the patent in suit.

The plaintiff is entitled to the usual decree for injunction and accounting.

---

⬯For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes