### VOORHEES RUBBER MFG. CO. v. MacDONNELL et al.

(Circuit Court of Appeals, Third Circuit. April 4, 1916. Rehearing Denied April 14, 1916.)

#### No. 2075.

PATENTS ⊙═328—INFRINGEMENT—PNEUMATIC TIRE.

The MacDonnell patent, No. 981,208, for a pneumatic tire which is rendered self-healing in case of puncture by means of a stay strip secured to the tread portion and which is nonstretchable in a direction transversely of the tire, thus holding it in a state of compression, but is capable of stretching in a direction longitudinally of the tire, makes the transversely nonstretchable quality of the stay strip an essential element. As so construed, *held* not infringed.

Appeal from the District Court of the United States for the District of New Jersey; John Rellstab, Judge.

Suit in equity by James MacDonnell and others against the Voorhees Rubber Manufacturing Company. Decree for complainants, and defendant appeals. Reversed.

For opinion below, see 227 Fed. 898.

Edwin J. Prindle, Arthur Wright, and Prindle, Wright, & Small, all of New York City, for appellant.

R. W. France and Duell, Warfield & Duell, all of New York City, for appellees.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

⊙═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

BUFFINGTON, Circuit Judge.   In this case James MacDonnell and others, owners of patent No. 981,208, granted to him January 10, 1911, for a pneumatic tire, charged the Voorhees Rubber Manufacturing Company with infringement of the second and fourth claims thereof.   On final hearing the court below, in an opinion reported in 227 Fed. 898, held the patent valid and the claims infringed.   From a decree so adjudging, the defendant took this appeal.

The patent in question concerns the self-healing of a punctured tire.   The specification recites that this had been heretofore attempted, viz.:

"It has heretofore been proposed to make a pneumatic tire with a tread portion thickened and made of rubber which is held under compression, so that if the tire is punctured the hole will be immediately sealed up as soon as the puncturing body is withdrawn."

It recited that in so doing nonstretchable stay strips had been used to cause the desired rubber compression, viz.:

"This construction has been secured by molding the tire tread in a normally depressed position and securing firmly to the exterior of the rubber body a stay strip of canvas or similar material, so that when the tire is inflated the *nonstretching qualities of the stay strip will cause the rubber to be compressed.*"

It then states that in these efforts the stay strips have been inelastic both transversely and longitudinally, viz.:

"So far as I am aware, in all prior attempts to make a tire of this type the stay strip or backing has been inelastic, both transversely and longitudinally."

MacDonnell then states that this inelasticity transversely is essential, and that the change he suggests is to retain the transverse inelasticity, but to substitute longitudinal elasticity for prior inelasticity, viz.:

"My present invention is in the nature of an improvement on tires of this class and aims to provide a construction wherein when the tire is inflated the tread portion thereof is held *against stretching in a transverse* direction, thereby securing the desired compression of the rubber, while at the same time said tread portion can expand or stretch longitudinally to permit the tire to assume its inflated shape without subjecting the portion of the tire opposite the tread to any appreciable longitudinal compression.   I accomplish my desired object by making the stay strip of such a character *that it is incapable of stretching transversely,* but is on the other hand capable of stretching in a direction longitudinally of the tire."

It will thus be seen that the invention which MacDonnell disclosed embodied two features: First, an inelastic, nonstretching, transverse stay strip variously described as the "nonstretching qualities of the stay strip," "inelastic quality in a direction transversely of the tire is essential," "held against stretching in a transverse direction," and "incapable of stretching transversely"; and second, as contrasted with this nonstretchable transverse stay strip, an elastic, stretchable longitudinal stay strip, described as "on the other hand capable of stretching in a direction longitudinally of the tire." These two features thus described in the specification are carried into claim 2 here in issue, viz.:

"A pneumatic tire of rubber having the material of its tread portion in a highly-compressed state in a direction transversely of the tire, and a stay

strip firmly secured to the outside of the tread portion, *which stay strip is nonstretchable* in a direction transversely of the tire, but is capable of stretching in a direction longitudinally of the tire."

It will thus be seen that MacDonnell's real disclosure was of a stay strip transversely nonstretchable and longitudinally stretchable and that these disclosed and described elements were carried into his claims. But his specification did not stop, as indeed it could not, with the mere announcement of a principle, for, as said in U. S. v. Bliss Co., 224 Fed. 325, —— C. C. A. ——:

"A principle is not the subject of a patent except through the instrumentalities by which the principle is carried out."

In pursuance, therefore, of the statutory requirement that his specification shall contain a written description of his discovery "and of the manner and process of making, constructing, * * * and using it, in such full, clear, * * * and exact terms as to enable any person skilled in the art * * * to make * * * and use the same" (Comp. St. 1913, § 9432), MacDonnell showed two stay strips which embodied his invention. While stating that his invention was "not limited to the construction herein illustrated," it will be noted that the two stay strips disclosed are alleged to have the two features of nonstretching transversely and stretching longitudinally, which was all the patent disclosed and which were claimed elements. It will also be noted that the means by which nonstretching of the stay strip transversely is effected is specifically set forth in the specification. In that regard MacDonnell says:

"The rubber tire has applied and firmly secured thereto a backing or stay strip 5 which has *special* characteristics as hereinafter described. * * * The stay strip 5 is so made that it is *incapable of stretching transversely* of the tire, but is capable of stretching in a direction longitudinally of the tire. Since the stay strip cannot stretch in a direction transversely of the tire, it will be readily apparent that when the tire is inflated, as shown in Fig. 2, the rubber forming the thickened tread portion of the tire will be put under considerable compression due to the fact that the outer face of the rubber is not permitted to expand because of the presence of the stay strip."

He then proceeds to show in detail how such transversely nonstretchable stay strips can be made in the bias form, viz.:

"The stay strip, having the capacity of stretching longitudinally while *being incapable of stretching transversely*, may be made in a variety of ways. One way of thus making the stay strip is to cut it on the bias; that is, to so form the stay strip that the warp and weft threads extend diagonally across the width of the strip, as seen in Figs. 3 and 4. Where *this construction is employed*, the stay strip is capable of stretching longitudinally as required to accommodate the increasing circumferential length of the tire as it is inflated, and such longitudinal stretching results in tending to draw the edges 8 of the stay strip together, as will be obvious. This tendency not only counteracts any tendency of the strip to stretch transversely, and thus makes the stay strip inelastic transversely, but also tends to actually decrease the width of the stay strip and thus augments the compression under which the rubber forming the tread portion 4 is placed."

And he then shows the use of the slit form, viz.:

"In Figs. 5 and 6 I have shown another embodiment of my invention, wherein the stay strip is provided with slits through its central portion to permit of the necessary longitudinal stretching of the portion which overlies the tread

of the tire. In this case the warp threads extend longitudinally of the *stay strip and the weft threads extend transversely thereof*, but the slits 20 formed in the stay strip permit the necessary elongation thereof at the tread portion of the tire."

In conclusion he sums up his whole disclosure as follows:

"From the above it will be seen that my invention comprehends the use of a stay strip for securing the desired compression of the tread portion of the tire, *which stay strip is incapable of stretching transversely*, but which is capable of stretching longitudinally to permit of the natural inflation of the tire."

From the above it will be seen that MacDonnell's disclosure was of a transversely nonstretchable stay strip and that this feature was made a claim element. Such being the case, it necessarily follows that any tire whose stay strip is stretchable, and which, when in use, is extended, is at variance with his disclosure and does not infringe his claim. The proofs and demonstrations in court make it clear that the defendant's stay strip does, when inflated, stretch transversely a material distance. It follows, therefore, that defendant's stay strip does not embody the very feature which MacDonnell disclosed and claimed.

The decree below must therefore be reversed, and the bill dismissed, on the ground of noninfringement.